# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Fred R. Rutland, Petitioner,

v.

State of South Carolina, Respondent.

Appellate Case No. 2014-000381

---

## ON WRIT OF CERTIORARI

---

Appeal from Lexington County
L. Casey Manning, Post-Conviction Relief Judge

---

Opinion No. 27614
Submitted January 15, 2016 – Filed March 30, 2016

---

## REVERSED

---

Appellate Defender Susan Barber Hackett, of Columbia, for Petitioner.

Attorney General Alan McCrory Wilson and Assistant Attorney General Patrick Lowell Schmeckpeper, both of Columbia, for Respondent.

---

**CHIEF JUSTICE PLEICONES:** Petitioner was convicted of murder, possession of a firearm during the commission of a violent crime, and pointing a firearm. He was sentenced to life imprisonment without parole. This Court affirmed petitioner's convictions and sentences on direct appeal. *State v. Rutland*, Op. No. 95-MO-263 (S.C. Sup. Ct. filed Aug. 25, 1995).

Petitioner filed a post-conviction relief ("PCR") action,[1] and sought certiorari to review the PCR judge's order denying relief. We granted the petition for a writ of certiorari on two issues: (1) whether the PCR judge erred in finding trial counsel was not ineffective by failing to cross-examine the State's "key" witness regarding prior inconsistent statements;[2] and (2) whether the PCR judge erred in finding trial counsel was not ineffective by failing to preserve for appellate review the trial judge's refusal to charge the jury on the defense of others. Because we find the PCR judge erred as to the first issue, we reverse the PCR judge's decision.[3]

## FACTS

Petitioner was romantically involved with the victim's estranged wife, Sally Peele ("Peele"), and both contend the victim was abusive and violent. On the morning of the victim's death, an altercation occurred at the Peele residence between petitioner, Peele, and the victim. Later that day, Peele and petitioner drove to Bow Wow Boutique ("Boutique"), a pet grooming business, to inquire about purchasing a vehicle from employee Kimberly Kestner ("Kestner"). The victim subsequently arrived at the Boutique, where he was shot and killed by petitioner. The only individuals in the Boutique at the time of the shooting, in addition to petitioner and the victim, were Peele and Kestner.

Prior to trial, Kestner gave a written and signed statement to law enforcement to the effect that the victim was armed when he was shot inside the Boutique. In the signed statement, Kestner attested, "[The victim] came in. He reached behind him

---

[1] The State consented to petitioner filing his PCR application after the statute of limitations had run. *See* S.C. Code Ann. § 17-27-45(A) (2014).

[2] Prior inconsistent statements are admissible pursuant to Rule 613, SCRE.

[3] We decline to address petitioner's second argument as our holding on the first issue is dispositive. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (noting an appellate court need not address remaining issues on appeal when the disposition of a prior issue is dispositive (citation omitted)).

and pulled a gun.  I heard two shots and [the victim] fell."  Kestner gave a similar statement to a newspaper reporter, who later wrote a published article quoting Kestner as stating, "[the victim] said nothing.  He pulled his gun out and was fixing to shoot, . . .  It scared me to death.  I couldn't understand why he was doing this."

At trial, Kestner testified she had a good view of the victim as he walked into the Boutique,[4] and the only thing she saw in the victim's hands was a pack of cigarettes, which he placed on the counter as soon as he walked in.  Kestner testified that as the victim entered the Boutique, petitioner put his pack of cigarettes in his mouth and reached behind his back, at which point the victim also reached behind his back.  Kestner testified she then heard two gunshots, and that she never saw the victim possess a gun, or utter a word during the quick exchange.  Kestner testified that after the victim was shot, she witnessed petitioner holding a handgun, and saw a second handgun lying on the floor.[5]

On cross-examination, trial counsel failed to question Kestner as to her prior inconsistent statements made to law enforcement and to the newspaper reporter.

Peele testified the victim entered the Boutique, drew his 9mm handgun, chambered a round,[6] and pointed the handgun at Peele.  Peele stated the victim had a "strange" look in his eyes she had seen before.[7]  Peele described that as she started moving toward the victim, she heard petitioner beg him, "Please don't," repeatedly.  Peele testified that, in shock, she turned to look at petitioner, who was holding a .25

---

[4] The State presented testimony by Robin Hunt that the encounter at the Boutique was prearranged by Peele; however, that testimony was recanted in 1997 in a sworn affidavit.

[5] The 9mm handgun was recovered on the floor four to five feet from the victim with one bullet in the chamber and a full magazine.  Peele later testified she moved the 9mm after the shooting in order to roll the victim over and administer CPR with petitioner's assistance.

[6] Specifically, Peele's testimony was, "He come through the front door fairly quick; stopped in front of the gate; put his hands behind him; pulled that nine out; shhh, shhh; loaded."

[7] Peele had previously testified as to the victim's demeanor when he was angry and abusive, stating, "I've seen him angry plenty of times.  You can see it in his -- you can see it in his eyes when he was angry."

caliber handgun pointed towards the floor. Peele testified that when the victim saw petitioner's handgun, he shifted his aim to petitioner, at which point Peele saw the victim pull the trigger of the 9mm handgun. Peele testified that at that moment, she heard gunshots, and the victim collapsed.

Petitioner's testimony largely corroborated Peele's version of events. However, petitioner added he had concealed the .25 caliber handgun and carried it into the Boutique due to threats made earlier that day by the victim to "blow [petitioner's] shit away, fuck [petitioner's] world up." Petitioner explained that as he saw the victim quickly approaching the front door of the Boutique, he tried to avoid a confrontation by exiting through the back of the building, but when petitioner could not find an escape route, he removed the .25 caliber handgun from his belt. Petitioner recalled that when he then encountered the victim, the victim reached behind his back, pulled out a handgun, cocked it, and aimed it at Peele from less than one foot away. Petitioner testified the victim appeared "wild," and was unresponsive to petitioner's verbal attempts to calm him down.

Petitioner stated the victim then aimed the 9mm handgun at petitioner and pulled the trigger. Petitioner explained seeing the victim pull the trigger prompted him to shoot the victim once, which did not faze the victim, and as petitioner saw the victim continue to pull the trigger, petitioner shot the victim three more times. Petitioner described that in the moment, he believed he himself had been shot.

At the PCR hearing, petitioner argued, *inter alia*, trial counsel was ineffective for failing to cross-examine Kestner as to her prior inconsistent statements that the victim was armed at the time of the shooting.

Trial counsel agreed Kestner's testimony at trial was important as she was the only disinterested, objective witness to the shooting. Trial counsel testified he was aware of Kestner's prior inconsistent statements, and acknowledged they could have been used to impeach her trial testimony, but explained he was unable to locate the newspaper article prior to trial, and admitted his failure to use the police report was due to his "oversight." Trial counsel further acknowledged that whether the victim was armed was an important issue at trial, and agreed the statement given under oath to law enforcement could have been used not only to impeach Kestner, but also could have been entered into evidence if she had denied giving it.

The solicitor testified he was aware of Kestner's prior inconsistent statements, and agreed her trial testimony was essential as she was the only independent witness, and any inconsistencies in her statements could have negatively affected her credibility.

Although Kestner did not testify at the PCR hearing, petitioner produced the signed police statement wherein Kestner stated the victim was armed at the time of the shooting. Petitioner also produced affidavits by several individuals swearing that after the incident, Kestner stated to them the victim was armed when he was shot.

In his order denying relief, the PCR judge determined trial counsel was deficient for failing to impeach Kestner with her prior inconsistent statements; however, the PCR judge further found petitioner failed to prove he was prejudiced by trial counsel's deficient performance. We granted petitioner's petition for a writ of certiorari to review the PCR judge's decision.

## ISSUE

Did the PCR judge err in finding trial counsel was not ineffective by failing to cross-examine the State's "key" witness as to her prior inconsistent statements?

## LAW/ANALYSIS

The PCR judge found that although trial counsel was deficient in failing to cross-examine Kestner as to her prior inconsistent statements, petitioner failed to meet his burden of proving trial counsel's deficiencies were prejudicial. We disagree.

A criminal defendant is guaranteed the right to effective assistance of counsel under the Sixth Amendment to the United States Constitution. U.S. Const. amend. VI; *Strickland v. Washington*, 466 U.S. 668, 669 (1984). In a PCR proceeding, the burden is on the applicant to prove the allegations in his application. *Ard v. Catoe*, 372 S.C. 318, 331, 642 S.E.2d 590, 596 (2007) (citation omitted). This Court will uphold factual findings of the PCR court if there is any evidence of probative value to support them. *Webb v. State*, 281 S.C. 237, 238, 314 S.E.2d 839, 839 (1984) (citation omitted). However, this Court will not uphold the findings of a PCR court if no probative evidence supports those findings. *Holland v. State*, 322 S.C. 111, 113, 470 S.E.2d 378, 379 (1996) (citing *Cartrette v. State*, 323 S.C. 15, 448 S.E.2d 553 (1994)).

In order to prove trial counsel was ineffective, the PCR applicant must show: (1) counsel's performance was deficient; and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Ard*, 372 S.C. at 331, 642 S.E.2d at 596 (citing *Strickland*, 466 U.S. at 687; *Rhodes v. State*, 349 S.C. 25, 30–31, 561 S.E.2d 606, 609 (2002)).

Regarding the deficiency prong, the proper measure of counsel's performance is whether he has provided representation within the range of competence required by attorneys in criminal cases. *McHam v. State*, 404 S.C. 465, 474, 746 S.E.2d 41, 46 (2013) (quoting *Butler v. State*, 286 S.C. 441, 442, 334 S.E.2d 813, 814 (1985)). Regarding the prejudice prong, the defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985) (citing *Strickland*, 466 U.S. at 694). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Strickland*, 466 U.S. at 694.

In denying petitioner's PCR application, the PCR judge relied on petitioner's failure to present Kestner as a witness at the PCR hearing and to produce extrinsic evidence as to her prior inconsistent statements.

We agree with the PCR judge's finding that there is substantial evidence trial counsel was deficient for failing to cross-examine Kestner as to her prior inconsistent statements. *See Strickland*, 466 U.S. at 688; Webb, 281 S.C. at 238, 314 S.E.2d at 839. However, we find the PCR judge's ruling as to the prejudice prong is not supported by the evidence in the record. *See Holland*, 322 S.C. at 113, 470 S.E.2d at 379 (stating the Court will not uphold findings of a PCR court if no probative evidence supports those findings). Principally, the PCR judge was incorrect in finding petitioner failed to produce extrinsic evidence of Kestner's statements at the PCR hearing. To the contrary, petitioner produced both the written copy of Kestner's statement to law enforcement, as well as affidavits from individuals attesting to have heard Kestner state the victim was armed at the time of the shooting. Accordingly, there is no evidence of probative value supporting the PCR judge's ruling that petitioner failed to present extrinsic evidence of Kestner's prior inconsistent statements. *See Holland*, 322 S.C. at 113, 470 S.E.2d at 379; *Webb*, 281 S.C. at 238; 314 S.E.2d at 839.

Further, had trial counsel discredited Kestner's testimony by raising the prior inconsistent statements on cross-examination, Kestner's credibility at trial would have suffered. Notably, petitioner admitted to shooting the victim, but maintained his actions were in self-defense; both petitioner and Peele testified at trial that the victim entered the Boutique and immediately brandished his 9mm handgun; and the only other witness to the shooting—and the only disinterested, objective witness—was Kestner. As a result, we find there is a reasonable probability the outcome of the trial would have been different had trial counsel impeached Kestner, as her prior inconsistent statements demonstrate all three witnesses to the incident attested at some juncture the victim was armed at the time of the shooting. *See Strickland*, 466 U.S. at 694; *see also, e.g.*, *Thomas v. State*, 308 S.C. 123, 124,

417 S.E.2d 531, 532 (1992) (finding trial counsel's performance was deficient and prejudicial in failing to call as witnesses medical personnel who were the only individuals that could cast doubt on the victim's identification of the petitioner). Moreover, had Kestner denied making the statements during cross-examination, trial counsel could have introduced as evidence the police report or the newspaper article, which we find also would have damaged Kestner's credibility as to her version of events leading up to the shooting. *See* Rule 613(b), SCRE.

Any question as to whether petitioner was prejudiced may be answered by looking to the solicitor's reliance on Kestner's trial testimony, and the questions posed by the jury upon deliberation. During closing arguments, the solicitor emphasized Kestner was the only "independent witness," and relied upon her testimony to argue the victim was never armed, stating, "[The victim] never ever pulled that weapon. [Kestner] didn't see it. . . . Kim Kestner independent witness. Kim Kestner never ever saw [victim] with [a gun] ever." The solicitor further insinuated the victim never possessed the 9mm handgun, suggesting it could have been planted at the scene of the shooting. We find the solicitor's reliance on Kestner's uncontroverted trial testimony highlights trial counsel's deficient performance, and supports a finding the deficient performance undermines confidence in the outcome of the trial. *See Strickland*, 466 U.S. at 694 (establishing the prejudice prong is satisfied when there is a reasonable probability that but for counsel's errors, the result of the trial would have been different, which requires a probability sufficient to undermine confidence in the outcome of the trial).

Additionally, it is clear the jury was focusing on whether the victim was armed. Out of several questions asked by the jury, one of the initial questions was whose fingerprints were on the 9mm handgun. We find this inquiry indicates the jury was considering the State's argument the victim was never armed, and was focusing "critical attention" on the sequence of events surrounding the shooting, which was undoubtedly impacted by Kestner's trial testimony, and would have been impacted by trial counsel's impeachment of those statements. *See State v. Blassingame*, 271 S.C. 44, 46–47, 244 S.E.2d 528, 530 (1978) (finding when a jury submits a question to the court following a jury charge, it is reasonable to assume the jury is focusing "critical attention" on the specific question asked). Moreover, although the jury was re-charged on the elements of murder, manslaughter, mutual combat, and self-defense at its request at least twice, the jury foreperson indicated she was unsure the jury could reach a unanimous verdict on any indictment except one.[8]

_____

[8] The foreperson did not disclose on which indictment she believed the jury could

The trial judge informed the foreperson he did not want to keep the jury from their families, but instructed the jury that it was important for them to work together to agree on a verdict, and asked that they continue to deliberate.  Although the jury had been deliberating over six hours at that point, the jury returned a verdict on all indictments ten minutes later.  Our finding that trial counsel's deficient performance undermines confidence in the outcome of petitioner's trial is supported by the jury's struggle to reach a unanimous verdict on all indictments in this case.  *See Strickland*, 466 U.S. at 694.

## CONCLUSION

For the reasons given above, we reverse the PCR judge's order denying petitioner PCR relief.

**BEATTY, KITTREDGE and HEARN, JJ., concur.  FEW, J., not participating.**

---

reach a unanimous verdict.