806 S.E.2d 713

**Anthony Neil BRIGGS, Respondent,**

**v.**

**STATE of South Carolina, Petitioner.**

**Appellate Case No. 2014-000693**
**Opinion No. 27745**

Supreme Court of South Carolina.

Submitted June 15, 2017

Filed October 25, 2017

318

Attorney General Alan McCrory Wilson and Assistant Attorney General Alicia A. Olive, both of Columbia.

Jeremy Adam Thompson, Law Office of Jeremy A. Thompson, LLC, of Columbia.

JUSTICE FEW:

This is a post-conviction relief (PCR) action. The PCR court granted relief and ordered a new trial. We affirm.

## I. Procedural History

The State indicted Briggs for criminal sexual conduct with a minor in the first degree and lewd act upon a child,[1] and called the case to trial on August 23, 2010. The victim testified Briggs touched her "private" with his "private" and with his

---

[1] *See* S.C. Code Ann. § 16-3-655(A) (2015) (defining criminal sexual conduct with a minor in the first degree); § 16-3-655(C) (defining criminal sexual conduct with a minor in the third degree, formerly known as lewd act upon a child)

mouth, and the jury watched video of two forensic interviews in which the victim explained what happened. Using a special interrogatory verdict form, the jury found Briggs performed "anal intercourse," "cunnilingus," and "other intrusion" on the victim. The trial court sentenced Briggs to life in prison. The court of appeals affirmed. *State v. Briggs*, Op. No. 2012-UP-323, 2012 WL 10842051 (S.C. Ct. App. filed May 30, 2012).

Briggs then filed this action for PCR. He claimed, among other things, his trial counsel was ineffective in permitting the forensic interviewer to give opinion testimony that she believed the victim's accusations to be true. The PCR court granted relief, vacated the convictions, and remanded to the court of general sessions for a new trial. We granted the State's petition for a writ of certiorari to review the PCR court's ruling.[2]

## II. Deficient Performance

Briggs' primary claim of ineffective assistance of counsel relates to the testimony of Michele Arroyo-Staggs, who conducted the two forensic interviews of the victim. At trial, the State called Arroyo-Staggs to testify about those interviews, and moved to qualify her as an expert witness in child abuse assessment.

The PCR court found trial counsel—Max B. Singleton of Spartanburg—was deficient in three respects as to the testimony of Arroyo-Staggs. First, Singleton failed to object to the qualification of Arroyo-Staggs as an expert witness. Second, Singleton did not object to her direct examination testimony that improperly bolstered the credibility of the victim. Third, Singleton intentionally elicited additional improper bolstering testimony from Arroyo-Staggs on cross-examination in which she explained the reasons she believed the victim's accusations against Briggs. The PCR court found Singleton's performance did not meet the objective standard of reasonableness by which we judge the performance of counsel under the first prong of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984). *See Williams v. State*, 363 S.C. 341, 343, 611 S.E.2d 232, 233 (2005) (stating the first prong of

---

2. We decide this case without oral argument pursuant to Rule 215, SCACR.

the *Strickland* test requires the applicant to prove "counsel's representation fell below an objective standard of reasonableness" (citing *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2064, 80 L.Ed.2d at 693)).

## A. Improper Bolstering Testimony

We begin with the PCR court's second finding, that Singleton was deficient for not objecting when Arroyo-Staggs gave improper bolstering testimony on direct examination. The PCR court focused on four points in Arroyo-Staggs' testimony. First, Arroyo-Staggs explained to the jury that before the interviews, she stressed to the victim the importance of telling the truth. Second, Arroyo-Staggs testified to her opinion the victim had not been coached. Third, Arroyo-Staggs told the jury "my role is to always find out ... whether or not the child is able to know the difference between a truth and a lie." On this point, the solicitor asked, "Do you make an assessment to determine whether or not the child understands truth and lie before you do [the interview]," and she replied, "That's correct." Fourth, when the solicitor asked Arroyo-Staggs to "describe for the jury what a forensic interview is," Arroyo-Staggs answered, "A forensic interview is an assessment that is conducted ... for the purpose of finding out if something happened or didn't happen." Similarly, when asked how she "assess[es] a child's competency to do a forensic interview," Arroyo-Staggs testified, "I base a lot of it on my experience and my knowledge and my training in reference to the developmental stages to figure out what has occurred."

■ In recent years, we have decided many cases on the question of the permissible limits of a forensic interviewer's testimony in the context of the prohibition against improper bolstering. *See, e.g.*, *State v. Anderson*, 413 S.C. 212, 776 S.E.2d 76 (2015); *State v. Chavis*, 412 S.C. 101, 771 S.E.2d 336 (2015); *State v. Kromah*, 401 S.C. 340, 737 S.E.2d 490 (2013); *State v. Whitner*, 399 S.C. 547, 732 S.E.2d 861 (2012); *State v. Jennings*, 394 S.C. 473, 716 S.E.2d 91 (2011). Under the holdings of those cases, the PCR court was correct to conclude Singleton should have objected to at least three of the categories of testimony listed. The State argues, however, the standards made clear in those cases were not so clear when Briggs was tried in 2010. Thus, the State argues, Singleton's failure to

object was reasonable under the circumstances that existed at the time. This is a forceful argument, as we may not judge the reasonableness of counsel's performance by standards that developed later. *See Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed. 2d at 694 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.").

As to the PCR court's first point, the State is correct. In 2015 in *Anderson*, we held, "There is to be no testimony" before the jury from a forensic interviewer about instructing the victim on "the importance of telling the truth" because this testimony "necessarily conveys to the jury that the interviewer and law enforcement believe the victim and that their beliefs led to the defendant's arrest, these charges, and this trial, thus impermissibly bolstering the minor's credibility." 413 S.C. at 221, 776 S.E.2d at 80. In *State v. Douglas*, 380 S.C. 499, 671 S.E.2d 606 (2009), however, we held that a forensic interviewer's explanation to the jury about the importance of telling the truth was not improper bolstering. 380 S.C. at 504, 671 S.E.2d at 609. The witness in *Douglas* told the jury "we talk a lot about telling the truth and telling a lie and we make an agreement with each other that I will tell her the truth and that she will tell me the truth, if we get past that, if the child agrees to do that, we go on." 380 S.C. at 501, 504, 671 S.E.2d at 607, 609. We disagreed this was "vouching for Victim's veracity" and held, "There is no evidence whatsoever [the forensic interviewer] believed the Victim to be telling the truth." 380 S.C. at 504, 671 S.E.2d at 609. On this point, therefore, Singleton's decision not to object was reasonable under the circumstances that existed at the time.

Our decision in *Douglas* makes clear, however, that a forensic interviewer may not be permitted to give testimony that improperly bolsters the credibility of the victim. We decided *Douglas* on appeal from a ruling by the court of appeals that recognized improper bolstering testimony is inadmissible. *See State v. Douglas*, 367 S.C. 498, 520, 626 S.E.2d 59, 71 (Ct. App. 2006) ("The only reasonable inference the jury could have drawn from Herod's testimony is that she believed the victim told the truth."), *aff'd in part, rev'd in part*, 380 S.C. 499, 671

S.E.2d 606. Our decision was not to disagree with the principle that improper bolstering testimony is inadmissible, but simply to disagree that the specific testimony at issue in that case was improper bolstering.

We also made the inadmissibility of improper bolstering clear in *Smith v. State*, 386 S.C. 562, 689 S.E.2d 629 (2010)—six months before Briggs' trial. In *Smith*, we found trial counsel was ineffective for not objecting to testimony by a forensic interviewer that improperly bolstered the victim's credibility. 386 S.C. at 569-70, 689 S.E.2d at 633. We explained, "The forensic interviewer ... testified without objection that she found the Victim's statement 'believable' and stated the Victim had no reason 'not to be truthful.' " 386 S.C. at 564, 689 S.E.2d at 631. We held "the forensic interviewer's ... opinion testimony improperly bolstered the Victim's credibility," 386 S.C. at 569, 689 S.E.2d at 633,[3] and granted a new trial, 386 S.C. at 570, 689 S.E.2d at 633. We stated "we can discern no defensible basis for trial counsel's failure to challenge the forensic interviewer's objectionable testimony." 386 S.C. at 568, 689 S.E.2d at 633.

 *Smith* demonstrates the central point of the prohibition against improper bolstering: a witness may not give an opinion for the purpose of conveying to the jury—directly or indirectly—that she believes the victim. The forensic interviewer's testimony in *Smith* that she found the victim's testimony "believable" directly conveyed her opinion as to the victim's credibility. Our holding that trial counsel was ineffective in failing to object to the testimony made it clear that when a forensic interviewer gives testimony that directly reveals her opinion on the victim's credibility, it is improper bolstering. However, we also found counsel ineffective for failing to object when the interviewer testified "the victim had no reason not to be truthful." This testimony indirectly conveyed her opinion on the victim's credibility. Therefore, *Smith* stands for the principle that there is "no defensible basis for trial counsel's failure to challenge" the testimony of a forensic

---

**3.** We also held counsel's failure to object to inadmissible hearsay quoted by the forensic interviewer corroborating the victim's testimony was deficient performance. 386 S.C. at 568, 689 S.E.2d at 633. The "opinion" testimony, however, was the testimony the victim was "believable" and "had no reason not to be truthful."

interviewer given for the purpose of revealing—directly or indirectly—the witness's opinion as to the credibility of the victim.

Even before *Smith*, however, the law was already clear that no witness may give an opinion as to whether the victim is telling the truth. In *State v. Dawkins*, 297 S.C. 386, 377 S.E.2d 298 (1989), the defendant made a pretrial motion "to prevent any testimony by one witness as to their opinion about the credibility of another witness." 297 S.C. at 393, 377 S.E.2d at 302. The trial judge agreed to the premise of the motion, stating he "didn't know of any provision that allows one witness to give their opinion relative to the credibility of another opinion by another witness." *Id.* During the trial, the solicitor asked the victim's treating psychiatrist, "Based on your examination and your observations of [the victim], are you of the impression that her symptoms are genuine?" *Id.* We found the question improper. 297 S.C. at 394, 377 S.E.2d at 302.

■ After *Dawkins* in 1989, certainly after *Douglas* in 2009 and *Smith* in 2010, reasonably competent trial counsel should know to object—absent a valid trial strategy—when a forensic interviewer gives testimony that indicates the witness believes the victim, but does not serve some other valid purpose. When the testimony directly conveys the witness's opinion that the victim is telling the truth, it is obviously improper bolstering. The question we have struggled with is whether the testimony at issue indirectly conveys that. In 2009 in *Douglas* we held testimony the forensic interviewer instructed the victim to tell the truth was fine, 380 S.C. at 504, 671 S.E.2d at 609; in 2015 in *Anderson* we held it is impermissible, 413 S.C. at 221, 776 S.E.2d at 80. Our inability to be clear as to this first point of testimony renders reasonable Singleton's failure to object to it, because we may not judge counsel's performance on standards that developed later.

■ The question to which we now turn is whether Arroyo-Staggs' testimony on the other three points constituted improper bolstering in 2010 when Briggs was tried.

Arroyo-Staggs' testimony that the victim had not been coached—the second point as to which the PCR court ruled Singleton should have objected—is similar to the "no reason

not to be truthful" testimony we found improper in *Smith*. After a series of questions about the general nature of coaching in which Arroyo-Staggs defined it as "when the child is being coerced to think about the [accusation] from somebody else's viewpoint," the State asked,

Q: When you were talking about coaching earlier and certain indications of a child having been coached, did you pick up on any of those during your interview with the victim?

A: I would say that in the first interview I really tried to assess that, as well as the second interview, and I did not find any evidence.

This testimony was arguably offered for the purpose of conveying the witness's opinion about the credibility of the victim, and thus could be improper bolstering. This is a point, however, as to which we will be very careful. Under certain circumstances, it may be proper for the State to ask an expert about coaching. For example, if defense counsel accused the child's mother or father in opening statement or on cross-examination of coaching the child to make an accusation they knew to be untrue, such a line of questioning to an expert could be admissible.

One can even envision a scenario in which coaching is implied, or otherwise becomes an issue without such a direct accusation. Under any of those circumstances, where the testimony is offered to address coaching as a disputed issue, it may be reasonable for counsel to decide not to object. *But see Stone v. State*, 419 S.C. 370, 386, 798 S.E.2d 561, 570 (2017) (stating "trial counsel should have objected to those components of the ... testimony as to which counsel felt he had a reasonably persuasive argument for exclusion").

In this case, Singleton testified his approach to the trial was not based on the victim having been coached, but on the opposite set of circumstances. In particular, when asked at the PCR trial, "Going into the [general sessions] trial, what was your strategy," Singleton testified his strategy was "to say that it didn't happen, because nobody, her mother, her grandmother, nobody believed the child, that it happened." In his opening statement, Singleton told the jury "the father didn't report it for over a month," even when "he knew ... the child

was going ... back to live with [Briggs]." As to the mother, Singleton told the jury, "It's not that she didn't believe [the victim] for a day or two. She didn't believe her for over a year." Thus, rather than painting a picture of a child coached by her parents to make a false accusation, Singleton painted a picture of a child who stood by her accusation despite the fact her parents did not support her.

Contrary to this strategy, however, Singleton also told the jury in his opening statement that the child's mother was telling "anybody that would listen" that "the father of the child was putting all of this in her head." Thus, Singleton made the question of whether someone coached the child to make a false accusation an issue in the case. Although Arroyo-Staggs' opinion that the victim had not been coached arguably provided an indirect indication to the jury that she believed the victim, the State has a good argument that it offered the opinion to respond to Singleton's statement in opening that made coaching an issue, not for the purpose of bolstering. Under these circumstances, we do not believe Arroyo-Staggs' testimony that the child had not been coached was improper bolstering, and we decline to hold that Singleton's failure to object to it was deficient performance.

■ We find, however, Arroyo-Staggs' testimony that her "role" was to determine whether the child knows the difference between the truth and a lie—the PCR court's third point—and that her "purpose" was "finding out if something happened" or "to figure out what has occurred"—the fourth point—clearly conveyed to the jury that she believed the victim. As we will explain, Singleton's failure to object to this testimony was deficient performance.

■ We have recognized that a forensic interviewer may serve dual purposes in child sex abuse cases. First, they serve an evidentiary purpose. As we explained in *Kromah*, a forensic interviewer is "a person specially trained to talk to children," her "job ... is ... to collect facts," and her "purpose is to prepare for trial." 401 S.C. at 357, 737 S.E.2d at 499. In this regard, as we explained in *Anderson*, "The sole purpose of her jury testimony is to lay the foundation for the introduction of the videotape, and the questioning must be limited to that subject." 413 S.C. at 220-21, 776 S.E.2d at 80. Thus, the

evidentiary purpose of a forensic interviewer is to use her skills in interviewing a child to enable the child to speak, so the jury—not the forensic interviewer—may determine "if something happened."

We have also recognized that forensic interviewers serve an investigatory purpose. In *Kromah*, we stated, "Forensic interviewers might be useful as a tool to aid law enforcement officers in their initial investigative process." 401 S.C. at 357 n.5, 737 S.E.2d at 499 n.5. In *Anderson*, we recognized that one "purpose of [a forensic] interview is to allow law enforcement to determine whether a criminal investigation is warranted." 413 S.C. at 221, 776 S.E.2d at 80. In both *Kromah* and *Anderson*, however, we specifically held that this investigatory purpose should not be discussed in the forensic interviewer's testimony before the jury. *Kromah*, 401 S.C. at 357-58 n.5, 737 S.E.2d at 499 n.5; *Anderson*, 413 S.C. at 221, 776 S.E.2d at 80.

In this explanation in *Anderson* and *Kromah* of the dual purposes of forensic interviewers, we did not create new standards by which to assess the admissibility of evidence, nor to judge the performance of counsel. Rather, we simply applied to specific factual situations the longstanding rule of law that no one may invade the province of the jury. We observed long ago it is "axiomatic" that "the credibility of the testimony of these witnesses is for the jury," *State v. Wright*, 269 S.C. 414, 417, 237 S.E.2d 764, 766 (1977), and recently "we have confronted instances where the State has ... sought to have the forensic interviewer, improperly imbued with the imprimatur of an expert witness, invade the province of the jury by vouching for the credibility of the alleged victim," *Whitner*, 399 S.C. at 559, 732 S.E.2d at 867.

In this case, by informing the jury she conducted the forensic interviews for the purpose of finding out whether the sexual abuse happened, Arroyo-Staggs went far beyond her role as a person who collects facts for the jury to use in the jury's determination of whether the victim was telling the truth. Arroyo-Staggs invaded the province of the jury and testified she had already made that determination. This testimony directly conveyed to the jury that she believed the victim.

Similarly, her testimony that she made the determination the child understood the difference between a truth and a lie before she conducted the interviews is not part of her evidentiary role. Arroyo-Staggs' testimony not only revealed to the jury that she believed the child knew the difference, but she also indirectly revealed she believed the subsequent disclosure in the interview was the truth.[4] There was no purpose for this testimony except to bolster the victim's credibility, and thus it was improper.

Finally, if Singleton decided not to object to Arroyo-Staggs' direct testimony based on a valid trial strategy, we would find his performance reasonable despite the inadmissibility of the evidence. *See Watson v. State*, 370 S.C. 68, 72-73, 634 S.E.2d 642, 644 (2006) (finding counsel's performance was not deficient in making the decision not to object to "inadmissible" testimony because his strategy—that doing so "might lead to the more damaging introduction" of other evidence—was valid). That is not a concern in this case because Singleton's strategy of showing nobody believed the victim, and thus the abuse did not happen, could not have been advanced by allowing Arroyo-Staggs to testify she believed her. In addition, Singleton testified he had no strategy to support his failure to object to Arroyo-Staggs' testimony, and he did not even consider objecting. If Singleton did not consider objecting, he could not have decided not to object as a matter of strategy.

We agree, therefore, that Singleton should have objected when Arroyo-Staggs gave improper bolstering testimony during her direct examination. We find the PCR court correctly concluded Singleton's performance in failing to object to Arroyo-Staggs' testimony on these two points was deficient under the first prong of *Strickland.*

---

4. Arroyo-Staggs' testimony that her role was to make the determination of whether the child knew the difference between the truth and a lie is different from the testimony the majority in *Douglas* found not to be improper bolstering. *See* 380 S.C. at 504, 671 S.E.2d at 609 (finding a forensic interviewer's explanation to the jury about the importance of telling the truth, and seeking an agreement with the child to tell the truth, was not improper bolstering). In *Douglas,* the witness acted as instructor, but Arroyo-Staggs testified she acted as decision-maker. Any witness who tells the jury she has decided questions of fact invades the province of the jury.

### B. Cross-Examination

■ The PCR court's third finding of deficiency was that Singleton elicited improper bolstering testimony from Arroyo-Staggs on cross-examination. Singleton asked,

Q: I guess what I'm trying to ask is if she can't pinpoint the time, not, you know, a specific date or—but around a holiday or a birthday or something like that, I guess, I mean, how can you assess if she's telling—I mean, how can you as an expert determine if she's telling the truth if she can't tell you exactly around about the time when it happened, around some specific event or holiday?

A: I can definitely assess it, which I have I believe accurately and appropriately, again, basing it on age appropriateness, information she's provided. And I don't even recall in the interviews if I asked specifically what date that that occurred. So it can be that I didn't ask.

Q: Right. But it doesn't concern you that when you ask a child how many times it happened and they say one and then they go all the way up to a thousand times, that doesn't concern you?

A: No, sir, it does not concern me, not in this particular case.

Q: Why does it not concern you?

A: Well, as I said before, based on her age and based on the information that she was able to give me, what I deducted was a disclosure based on the appropriateness of the—what I saw, what I heard, her statements, behavior and affect—were all appropriate for her age.

Singleton's cross-examination question "how can you as an expert determine if she's telling the truth"—particularly the open-ended quality of the question—was sure to solicit an answer that directly bolstered the victim's credibility. Arroyo-Staggs' answer met expectations, and placed squarely before the jury her opinion that the victim was telling the truth. That question and those that followed violated a fundamental principle of cross-examination. *See* Francis L. Wellman, THE ART OF CROSS-EXAMINATION 79-80 (1903) (instructing that "no question should be put to an expert which is in any way so broad as to give the expert an opportunity to expatiate upon his own

views, and thus afford him an opportunity in his answer to give his reasons, in his own way, for his opinions, which counsel calling him as an expert might not otherwise have fully brought out in his examination").[5]

We can discern no defensible purpose for Singleton's cross-examination questions. Singleton did not provide any. As we explained earlier, Singleton testified his strategy was "to say that it didn't happen, because nobody, her mother, her grandmother, nobody believed the child, that it happened." Singleton's deficiency in these cross-examination questions was that despite this strategy, he made sure the jury knew at least one person believed the child—the expert. In the series of questions and answers quoted above, from which Singleton appears to have gained nothing for Briggs, he permitted a highly-educated, articulate, certified expert witness to provide the jury something that significantly undermined his strategy—an expert who believed the victim.

The PCR court found Singleton "compounded Arroyo-Staggs' prejudicial testimony on direct examination by repeatedly asking her [on cross], as an expert and in her professional opinion, whether or not she felt the victim was truthful." The PCR court found Singleton permitted Arroyo-Staggs to convey to the jury that she "independently reviewed the [victim's] disclosure and found it to be truthful." The PCR court also found, quoting *Jennings*, 394 S.C. at 480, 716 S.E.2d at 94, "[t]here is no other way to interpret [Arroyo-Staggs' testimony] than to mean [she] believed the child[ ] [was] being truthful." We find the PCR court correctly concluded Singleton was deficient under the first prong of *Strickland* in cross-examining Arroyo-Staggs because he elicited from her and presented to the jury her direct statement that she believed the victim's accusations when nobody else did.

## C. Expert Qualifications

██ We disagree, however, with the PCR court's finding that Singleton was deficient in not objecting to Arroyo-Staggs

---

5. *See* William H. Fortune, Richard H. Underwood, and Edward J. Imwinkelried, MODERN LITIGATION AND PROFESSIONAL RESPONSIBILITY HANDBOOK 428 (Aspen Publishers 2001) ("As most students of trial advocacy know, Francis Wellman authored *the* text on cross-examination, THE ART OF CROSS-EXAMINATION, widely regarded as the classic American book on the subject." (emphasis in original)).

being qualified as an expert. Our analysis begins with *Douglas*, in which we addressed whether the trial court should have allowed a witness to be qualified as an expert in forensic interviewing. On appeal from a ruling by the court of appeals that qualifying a forensic interviewer as an expert was not error, we affirmed, but said only that it was "unnecessary" on the facts of that case. 380 S.C. at 501, 671 S.E.2d at 608. We did not say it was error,[6] and specifically recognized "there may be a case in which qualification of an expert in this field is proper." 380 S.C. at 503 n.2, 671 S.E.2d at 608 n.2. In subsequent cases, we have permitted a forensic interviewer to be qualified in related areas such as "child abuse assessment," the field in which the State offered Arroyo-Staggs as an expert. In *Anderson*, for example, while we held we do not recognize expertise in the narrow field of "forensic interview*ing*," 413 S.C. at 219, 776 S.E.2d at 79 (emphasis added), we held that a forensic interviewer may be qualified as an expert in child abuse assessment to "testify to the behavioral characteristics of sex abuse victims," 413 S.C. at 218, 776 S.E.2d at 79. Writing in partial dissent in *Anderson*, then Chief Justice Toal—joined by Justice Kittredge—stated "forensic interviewers have a legitimate role to play in these cases, ... may be qualified as experts in child abuse assessment[, and] may testify ... as experts regarding matters in their expertise, such as delayed disclosure." 413 S.C. at 222, 776 S.E.2d at 81 (Toal, C.J., dissenting in part).[7]

Since *Anderson*, the court of appeals has on at least two occasions affirmed a trial court's qualification of a forensic

---

**6.** In his dissenting opinion, Justice Pleicones interpreted the majority opinion as finding error in the qualification of the witness as an expert. 380 S.C. at 505, 671 S.E.2d at 609-10 (Pleicones, J., dissenting).

**7.** In *State v. Baker*, 390 S.C. 56, 700 S.E.2d 440 (Ct. App. 2010), *rev'd on other grounds*, 411 S.C. 583, 769 S.E.2d 860 (2015), the court of appeals reviewed a trial court's decision to qualify a witness "as an expert in forensic interviewing." 390 S.C. at 67, 700 S.E.2d at 445. The court of appeals did not find error, but assuming error for the purposes of the argument, found "Baker suffered no prejudice." *Id.* On certiorari from the court of appeals' decision, then Chief Justice Toal—joined by Justice Kittredge—wrote in dissent she would find no error in the trial court's decision. *See* 411 S.C. at 592, 769 S.E.2d at 865 (Toal, C.J., dissenting) ("I would find that the trial court did not err qualifying [the witness] as an expert in forensic interviewing.").

interviewer as an expert to testify as to the behavior of child sex abuse victims. *See State v. Barrett*, 416 S.C. 124, 130, 785 S.E.2d 387, 390 (Ct. App. 2016), *cert. granted* (Mar. 24, 2017) (finding "no error" in qualifying a forensic interviewer as an expert to testify "regarding general behavioral characteristics" of child sex abuse victims); *State v. White*, 416 S.C. 135, 138, 784 S.E.2d 695, 696 (Ct. App. 2016) (finding "the trial court acted within its discretion" when it qualified "the forensic interviewer as an expert in the dynamics of child abuse").

In light of this history of permitting forensic interviewers to testify as experts, we simply cannot say it was unreasonable for Singleton to not object to the qualification of Arroyo-Staggs as an expert in child abuse assessment in the August 2010 trial.

## III. Prejudice

To satisfy the second prong of *Strickland*—the prejudice prong—Briggs must demonstrate a "reasonable probability" the result of the trial would have been different if Singleton had not committed the errors we discussed above. *Rutland v. State*, 415 S.C. 570, 577, 785 S.E.2d 350, 353 (2016). "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial." *Id.* On this point, the evidence is conflicting. On one hand, there was no physical evidence any sexual abuse occurred, and thus the victim's credibility was very important. Singleton testified the case "turned on the credibility of the little girl," and he told his client "it would come down to whether they believed her or not." In addition, as we explained in *Kromah*, the "impermissible harm" from improper bolstering "is compounded" when the witness "is qualified as an expert." 401 S.C. at 358, 737 S.E.2d at 499.[8]

On the other hand, the State presented additional evidence that Briggs sexually assaulted the victim. For example, in a lengthy interview with law enforcement after he waived his right to remain silent, as one detective testified, Briggs did not

---

8. *Contra Douglas*, 380 S.C. at 503, 671 S.E.2d at 609 (finding the contention "the jury was likely to give [the forensic interviewer's] testimony undue weight simply because of her qualification as an expert" to be "untenable").

strongly deny he abused the victim. In fact, the detective testified, when asked whether he was going to say he didn't sexually assault the victim, Briggs responded, "Well, I'm not going to deny it to you because you know better." Briggs told another detective he was "sick and he needed help." Briggs also made a series of strange statements in recorded phone calls from the jail that the State effectively argued were incriminating. Finally, two of Briggs' fellow prisoners testified he made incriminating statements. One testified Briggs told him "he pulled the girl off the bed. And he used to ride her on his lap playing horsey with her. And he said that one time he ejaculated. She asked what it was, and he told her it was snot." The other testified he overheard Briggs saying "he rubbed his penis in between [the victim's] legs, butt area, and until he ejaculated" and "basically he had the case beat because he didn't penetrate her."

While all of this evidence could indicate the jury was certain to find Briggs guilty—regardless of Arroyo-Staggs' improper bolstering—our decision is governed by the standard of review. We defer to a PCR court's findings of fact, and we will uphold them if there is evidence in the record to support them. *Sellner v. State*, 416 S.C. 606, 610, 787 S.E.2d 525, 527 (2016) (citing *Jordan v. State*, 406 S.C. 443, 448, 752 S.E.2d 538, 540 (2013)). The PCR court found the case "came down to the victim's believability and credibility." The PCR court found the most damaging testimony to Briggs—that of the "two jailhouse informants"—was not reliable because their "credibility is highly suspect." Finally, the PCR court found "there is a reasonable probability that the result of the Applicant's trial would have been different" if Singleton had not allowed Arroyo-Staggs to improperly bolster the victim. Giving to the factual findings by the PCR court the deference we are required by law to give, we affirm the court's finding that Briggs proved prejudice, satisfying the second prong *Strickland*.

## IV. Conclusion

Briggs's trial counsel was deficient for not objecting to, and eliciting, testimony from the forensic interviewer which improperly bolstered the credibility of the victim. We **AFFIRM**

the PCR court's finding that this deficiency prejudiced Briggs and **REMAND** to the court of general sessions for a new trial.

KITTREDGE, HEARN and JAMES, JJ., concur.
BEATTY, C.J., concurring in result only.