# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Petitioner,

v.

Ontario Stefon Patrick Makins, Respondent.

Appellate Case No. 2020-000024

———————

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

———————

Appeal from Greenville County
Robin B. Stilwell, Circuit Court Judge

———————

Opinion No. 28039
Heard March 24, 2021 – Filed June 23, 2021

———————

## REVERSED

———————

Attorney General Alan McCrory Wilson and Senior
Assistant Attorney General David A. Spencer, of
Columbia; and Solicitor William W. Wilkins III, of
Greenville, for Petitioner.

Appellate Defender Taylor Davis Gilliam, of Columbia,
for Respondent.

———————

**JUSTICE JAMES:** Ontario Stefon Patrick Makins was indicted for lewd act upon
a minor, third-degree criminal sexual conduct (CSC) with a minor, and first-degree

CSC with a minor.[1]  He was convicted by a jury of third-degree CSC with a minor. The court of appeals reversed the conviction, holding a therapist's affirmation she treated the minor victim (Minor) improperly bolstered Minor's credibility.  *State v. Makins*, 428 S.C. 440, 835 S.E.2d 532 (Ct. App. 2019).  We granted the State's petition for a writ of certiorari.

## Background

The State presented evidence at trial that Makins sexually abused Minor on several occasions when Minor was between the ages of five and eight.  Minor was ten at the time of trial.  After the allegations were made, Minor was treated by Kristin Rich, a childhood trauma therapist.  Minor and Rich were the primary prosecution witnesses.  The State called Rich both as an expert in the treatment of child trauma and child sexual abuse dynamics and as Minor's treating therapist.  Rich's testimony as treating therapist is the basis of Makins's appeal.  As Minor's treating therapist, Rich gave limited testimony about certain disclosures Minor made to her during therapy sessions.  We address one primary issue in this appeal: by testifying both as an expert in characteristics of child trauma and child sexual abuse dynamics and as Minor's treating therapist, did Rich imply she thought Minor was truthful, thereby improperly bolstering Minor's credibility?

The trial court and the parties discussed vouching extensively throughout the trial.  Before the jury was impaneled, the trial court expressed reservations about allowing certain portions of Rich's testimony:

> This is my concern about this witness and why I'm somewhat circumspect.  We have a long line of cases which discuss expert witnesses buttressing the credibility of minor witnesses.  And although I think that most of what [Rich] talked about in a vacuum is okay, my concern is that [Rich] begins to talk about the specific treatment and discussions with [Minor] and without saying "that makes her believable," [Rich] is suggesting that that makes [Minor] believable. And I want to make sure that what we're not doing is an end run around

---

[1] Third-degree CSC with a minor is codified in S.C. Code Ann. § 16-3-655(C) (2015).  Conduct that would now qualify as third-degree CSC with a minor was formerly known as lewd act upon a minor and was codified in S.C. Code Ann. § 16-15-140 (repealed 2012).  The effective date of the repeal of section 16-15-140 and its replacement with subsection 16-3-655(C) was June 18, 2012.  The indictment range in this case began on June 17, 2012, and ended on March 20, 2015, so Makins was indicted for both lewd act and third-degree CSC with a minor.

forensic interviewers being qualified as expert witnesses and thereby buttressing the credibility of witnesses. . . . [T]he question is, what opinion will be offered and how close are we going to get to [Rich] saying, "I talked to [Minor]. I diagnosed [Minor] as being a victim of childhood sexual trauma and all of her answers were consistent with my diagnosis for childhood sexual trauma."

The trial court continued:

And when and if [Rich] gets to the point that says anything that suggests -- and I understand that she's not going to say it verbatim and she's not going to articulate it very, very clearly. But anything that suggest [sic] that "I diagnosed this girl and because she shows all of these signs, she's telling the truth," that's where we can't go.

Later in the pre-trial process, the trial court clarified:

I don't think I have any issue with [Rich] saying that she talked to [Minor], and that [Minor] exhibits symptoms of post-traumatic stress disorder. Beyond that, I'm concerned that if [Rich] starts matching up her testimony with [Minor's] symptoms, we are essentially establishing a circumstance where she is vouching for the credibility of the witness. If that happens, I don't think that I have any choice but to declare a mistrial and I don't want to get there. You can put her in the -- on the stand to testify as a fact witness without any vouching for the credibility. And then use a blind witness if you want to. Or you can use a blind witness. But don't get to the point where she's vouching for the credibility, okay?

Before the jury, Rich testified about her training in and her use of "trauma-focused cognitive behavioral therapy, which is particularly related to childhood trauma." She defined trauma as:

. . . a very bad event where somebody feels like they might be hurt or killed or something very bad might happen to them. And generally, it's shocking in nature where somebody feels helpless or terrorized or horrified. . . . It's something that tragically shifts your life.

Rich testified to her specialized trauma training, particularly for children who have disclosed sexual abuse. Rich estimated she had provided therapy to approximately 500 children over the course of her career and between 120 to 150 of those children had experienced trauma as a result of sexual abuse. After the trial

court qualified her as an expert, Rich testified to the symptoms children exhibit that are associated with trauma and, more specifically, symptoms of sexual abuse trauma. She also explained delayed disclosure and why children often disclose such abuse in a piecemeal fashion over time.

At this juncture, the State said, "I want to move a little more specifically. Have you provided therapy to the victim in this case, [Minor]?" Rich replied, "[y]es." Defense counsel objected, the jury was excused, and defense counsel moved for a mistrial.

Defense counsel argued the combination of Rich's testimony about treating trauma victims, the focus on sexual abuse symptoms and trauma treatment, and her statement that a sizeable portion of her clients have suffered sexual abuse equated to Rich testifying, "'Every child I work with or every person I work with has suffered some trauma. That's why I provide counseling to them, is they are my clientele.'" Defense counsel argued Rich vouched for Minor's credibility by "saying in essence 'if she didn't suffer trauma, I wouldn't be working with her.'" He further argued, "she is saying, 'I believe Minor has suffered a trauma.'" To be clear, these comments by defense counsel were not quotes of Rich's actual testimony, but rather were defense counsel's summary of the practical impact of Rich's testimony upon the jury.

The State argued Rich's testimony had so far been the equivalent of blind expert testimony, and Rich had not stated she believed Minor. The State reiterated the limitations the trial court had placed on Rich's testimony and argued adopting defense counsel's position would preclude the State from using experts in this context.

Stating this is "definitely an issue on appeal," the trial court concluded Rich had testified as a blind witness up to that point and had not yet gotten to the point of vouching. The trial court denied the motion for mistrial. After a recess, the trial court further limited Rich's testimony to whether she treated Minor, whether Minor disclosed sexual abuse, and the circumstances of the disclosure:

> I think, after having heard the testimony and heard what [Rich] said, I think that once [Rich] starts to say that "I was the attending physician and I diagnosed this and I treated this," then we are right back where the Supreme Court told us not to go and that's vouching for the credibility of the witness. Now, I recognize that [Rich] wouldn't expressly say that [Minor is] truthful. But I think it ultimately serves the same end.

The jury returned to the courtroom. Rich testified Minor disclosed to her that she had been sexually abused but did not want to talk about it. Rich testified she asked Minor about "the worst time," and Minor drew a picture to illustrate. The drawing depicted an act that would constitute first-degree CSC with a minor. When Rich asked who the people in the picture were, Minor identified herself and Makins. Rich testified, "[i]t wasn't until the second session that [Minor] would say [what she saw] because part of the therapy is to be able to say the things that you're scared of." Rich stated Minor disclosed the abuse started when she was five and ended around ages seven or eight, and it always happened at her sister Toi's house. Toi is Makins's girlfriend, and they have two children together.

Minor testified Makins forced her to perform oral sex multiple times (first-degree CSC with a minor) and touched her inappropriately (lewd act and third-degree CSC with a minor). She testified Makins made her touch his penis with her hand (lewd act and third-degree CSC with a minor), and she said he showed her sexually-oriented websites on his phone. Minor testified she did not know this was wrong until she attended a school presentation on "tricky people" and child molesters. The State presented no direct physical evidence of sexual abuse.

The jury acquitted Makins of first-degree CSC with a minor and lewd act but convicted him of third-degree CSC with a minor. The court of appeals reversed the conviction, holding Rich's testimony she treated Minor implied she believed Minor was telling the truth and improperly bolstered Minor's credibility. *State v. Makins*, 428 S.C. 440, 449-50, 835 S.E.2d 532, 537 (Ct. App. 2019). This Court granted the State a writ of certiorari to review the court of appeals' decision.

## Standard of Review

The decision to grant or deny a mistrial is within the sound discretion of the trial court. *State v. Dawkins*, 297 S.C. 386, 394, 377 S.E.2d 298, 302 (1989). The trial court's decision will not be overturned on appeal absent an abuse of discretion resulting in prejudice to the defendant. *Id.* Granting a mistrial is a serious and extreme measure which should only be taken when the prejudice can be removed no other way. *State v. Kelsey*, 331 S.C. 50, 70, 502 S.E.2d 63, 73 (1998).

"The decision to admit or exclude testimony from an expert witness rests within the trial court's sound discretion." *State v. Price*, 368 S.C. 494, 498, 629 S.E.2d 363, 365 (2006). "The trial court's decision to admit expert testimony will not be reversed on appeal absent an abuse of discretion." *Id.* "An abuse of discretion occurs when a trial court's decision is unsupported by the evidence or controlled by an error of law." *State v. Bryant*, 372 S.C. 305, 312, 642 S.E.2d 582, 586 (2007).

## Discussion

The standard of review is critical to our analysis of both the trial court's denial of the mistrial motion and its evidentiary rulings. If the standard of review were de novo, an appellate court could simply rule on the evidentiary and mistrial issues in accordance with its own view of the dynamic faced by the trial court. However, under the deferential standard applicable here, an appellate court cannot disturb the trial court's rulings unless they lacked evidentiary support or were controlled by an error of law. In their briefs, the parties cited the correct standard of review but did not tailor their arguments to it. The court of appeals cited the standard of review but did not articulate how its holding took this standard into account. As we will explain, this is a difficult case, and our holding largely turns on the application of this deferential standard to the trial court's rulings.

"The assessment of witness credibility is within the exclusive province of the jury." *State v. McKerley*, 397 S.C. 461, 464, 725 S.E.2d 139, 141 (Ct. App. 2012). While experts can testify to their opinion, they are precluded from offering an opinion about the credibility of other witnesses. *State v. Kromah*, 401 S.C. 340, 358, 737 S.E.2d 490, 499 (2013). "Specifically, it is improper for a witness to testify as to his or her opinion about the credibility of a child victim in a sexual abuse matter." *Id.* at 358-59, 737 S.E.2d at 500. "A witness may not give an opinion for the purpose of conveying to the jury—directly or indirectly—that she believes the victim." *Briggs v. State*, 421 S.C. 316, 324, 806 S.E.2d 713, 717 (2017).

In *State v. Anderson*, the Court recognized the expertise of child abuse assessment experts, who testify to the behavioral characteristics of sex abuse victims, but cautioned:

> The better practice, however, is not to have the individual who examined the alleged victim testify, but rather to call an independent expert. To allow the person who examined the child to testify to the characteristics of victims runs the risk that the expert will vouch for the alleged victim's credibility.

413 S.C. 212, 218-19, 776 S.E.2d 76, 79 (2015). In *Briggs*, this Court reiterated it had not created any new law or standard regarding admissibility in *Kromah* or *Anderson* but instead applied the general rule that a witness cannot bolster the credibility of another witness because doing so invades the province of the jury. 421 S.C. at 328, 806 S.E.2d at 719.

In the instant case, the court of appeals held as follows:

We find Rich's opinion testimony addressing the various manifestations of child sexual abuse, followed immediately by her affirmative response that she treated [Minor], implied she believed [Minor] was telling the truth with respect to her allegations of sexual abuse. If Rich believed [Minor] had not been telling the truth, Rich would have not needed to treat her. As the circuit court warned, Rich's testimony implied she was treating [Minor] for sexual trauma because [Minor] had suffered such trauma.

*Makins*, 428 S.C. at 448-49, 835 S.E.2d at 537.

The State argues the court of appeals erred in ruling Rich's testimony that she treated Minor implied she believed Minor. The State argues Rich gave permissible blind expert testimony and testified to the time, date, and circumstances of her meeting with Minor. The State further argues that while Rich testified she treated Minor and that Minor disclosed abuse to her, Rich did not testify about Minor's diagnosis, state she suffered from trauma, provide an opinion, or make conclusions or findings in her testimony. The State argues no improper bolstering occurred because Rich did not comment directly or indirectly on Minor's credibility.

This case is distinguishable from precedent cited by the parties because Rich's alleged improper bolstering was not direct. Rich's simple affirmation that she provided therapy to Minor also differs from previous indirect vouching cases in which expert witness testimony was more extensive. *See Briggs*, 421 S.C. at 329, 806 S.E.2d at 720 (ruling forensic interviewer's testimony she made the determination the child understood the difference between the truth and a lie "indirectly revealed she believed the subsequent disclosure . . . was the truth"); *State v. Chavis*, 412 S.C. 101, 108, 771 S.E.2d 336, 340 (2015) (holding forensic interviewer's testimony that child victim should "not be around [Appellant] for any reason" improperly bolstered the child victim's credibility); *Kromah*, 401 S.C. at 359, 737 S.E.2d at 500 (ruling forensic interviewer's testimony about "a compelling finding of child abuse" was the equivalent of her stating the child was being truthful); *State v. Jennings*, 394 S.C. 473, 480, 716 S.E.2d 91, 94 (2011) (concluding there was no other way to interpret the language in the forensic interviewer's reports that each child had "provide[d] a compelling disclosure of abuse by [appellant]" than to mean she believed the children were truthful).

Whether Rich's testimony constituted improper bolstering is a close question. As a result of the limitations the trial court placed on her testimony, Rich never testified she advised Minor about the importance of being truthful, never testified directly as to Minor's truthfulness, and never opined Minor's behavior indicated

truthfulness. While Rich was allowed to confirm she treated Minor, she was not allowed to explain why she was treating Minor, detail her treatment of Minor, or testify as to her diagnosis of Minor. Rich only addressed the circumstances of Minor's disclosure of abuse and the drawing Minor produced in therapy.

The court of appeals referenced the timing and manner in which Rich affirmed she treated Minor, noting Rich's opinion testimony on the "various manifestations of child sexual abuse" was "followed immediately" by her response that she treated Minor, therefore implying Rich believed Minor's allegations. *Makins*, 428 S.C. at 448-49, 835 S.E.2d at 537. While we do not reject outright the notion that circumstances, such as timing and manner, could possibly contribute to improper bolstering, this Court has typically focused on the content of the expert's testimony. *See, e.g.*, *Briggs*, 421 S.C. at 324, 806 S.E.2d at 717 (explaining the general rule governing bolstering is "a witness may not give an opinion for the purpose of conveying to the jury—directly or indirectly—that she believes the victim"). We see no reason to abandon our prior approach based upon the facts of this case. To suggest Rich's simple affirmation that she provided therapy to Minor can singularly constitute improper bolstering is a bridge too far. In this specific context, Rich's "yes" alone, without more, did not convey to the jury that Rich believed Minor.

The State further argues the court of appeals' holding on bolstering is too broad. We agree. As noted above, the court of appeals concluded, "[i]f Rich believed [Minor] had not been telling the truth, Rich would not have needed to treat her." The exclusion of Rich's testimony on this ground goes beyond this Court's warning in *Anderson* against having one expert testify as a general characteristics expert and as a treating expert. The application of such an overly broad rule would mean the testimony of a child's treating therapist—even when there was a blind characteristics expert—always indirectly and improperly bolsters the child's credibility. In practical terms, the court of appeals' ruling would require the exclusion of treating experts' testimony in general—a result Makins acknowledged he is seeking but one he struggled to defend during oral argument. This Court and the court of appeals have generally allowed the testimony of treating experts in this context. *See State v. White*, 361 S.C. 407, 415, 605 S.E.2d 540, 544 (2004) (holding treating psychotherapist's testimony that adult victim's symptoms were consistent with those of someone who recently suffered trauma was probative to refute defendant's contention the sex was consensual and to prove a sexual assault occurred); *Dawkins*, 297 S.C. at 394, 377 S.E.2d at 302 (considering testimony of the minor's treating psychiatrist); *State v. Dempsey*, 340 S.C. 565, 572, 532 S.E.2d 306, 310 (Ct. App. 2000) (addressing testimony of the minor's treating therapist); *State v. Berry*, 413 S.C. 118, 131, 775 S.E.2d 51, 57 (Ct. App. 2015) (concluding

treating psychotherapist's testimony about minor victim's symptoms was based on personal observations and was admissible), *aff'd as modified on other grounds*, 418 S.C. 500, 795 S.E.2d 26 (2016).

Furthermore, the court of appeals also erred in appearing to create a bright line rule where this Court has refused to do so. While *Anderson* cautioned the better practice is to use a separate witness for general characteristics testimony, it did not forbid the practice of calling a dual expert. 413 S.C. at 218-19, 776 S.E.2d at 79. The court of appeals appears to leave no room for the treating individual to do both. The mere fact that Rich testified as a dual expert is not improper bolstering per se.

Rich's testimony served valid evidentiary purposes. Rich's testimony as Minor's treating therapist was required to lay the foundation for introducing Minor's graphic drawing into evidence. Minor's drawing and her disclosure to Rich were the basis of the most serious charge against Makins—first-degree CSC with a minor. Therefore, Rich's testimony served a purpose other than to vouch for Minor's credibility. *Contra Briggs*, 421 S.C. at 329, 806 S.E.2d at 720 (stating the witness's testimony was improper where there was no other purpose for it than to bolster the victim's credibility).

The trial court's limitations on Rich's testimony achieved their purpose—her testimony contained no direct or indirect bolstering discernible to this Court. The trial court deftly navigated the issue and protected the proceeding from improper bolstering. We find no abuse of discretion in the trial court's decisions to deny Makins's motion for mistrial or to admit Rich's limited testimony.[2]

While we find no improper bolstering occurred in this case, we repeat our warning in *Anderson* about dual experts. Using one witness as both a characteristics expert and the treatment witness is a risky undertaking. This issue might have been avoided completely had the State called a blind characteristics expert, a path the trial court repeatedly encouraged the State to follow. Instead, the State chose to proceed with Rich acting as a dual expert. While we rule in the State's favor on these facts, this opinion should not be construed as a retreat from our warning in *Anderson*.

---

[2] We note defense counsel used the trial court's rulings to his advantage during closing arguments when he argued no one testified why Rich was treating Minor or if Minor suffered symptoms due to the alleged abuse. This was the very evidence the trial court excluded after defense counsel's objections.

## Conclusion

For the foregoing reasons, we reverse the court of appeals and reinstate the conviction.

**REVERSED.**

**BEATTY, C.J., KITTREDGE, HEARN and FEW, JJ., concur.**