# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Yancey Thompson, Petitioner,

v.

State of South Carolina, Respondent.

Appellate Case No. 2014-001611

---

## ON WRIT OF CERTIORARI

---

Appeal from Lexington County
R. Lawton McIntosh, Circuit Court Judge

---

Opinion No. 27785
Submitted October 16, 2017 – Filed March 21, 2018

---

## REVERSED

---

Appellate Defender Robert M. Pachak, of Columbia, for Petitioner.

Attorney General Alan M. Wilson and Senior Assistant Attorney General Melody Jane Brown, of Columbia, for Respondent.

---

**JUSTICE JAMES:**  We granted a writ of certiorari to review the circuit court's denial of Petitioner's application for post-conviction relief (PCR).[1]  We reverse the

---

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.

PCR court's denial of relief and remand to the court of general sessions for a new trial.

## I.

In 2008, Petitioner Yancey Thompson was convicted of first degree criminal sexual conduct (CSC) with a minor, second degree CSC with a minor, and disseminating obscene material to a minor. He was sentenced to concurrent prison terms of twenty-five years, twenty years, and ten years, respectively. Petitioner appealed and this Court affirmed his convictions. *State v. Thompson*, Op. No. 2010-MO-028 (S.C. Sup. Ct. filed Nov. 8, 2010). Petitioner then sought PCR. The PCR court concluded Petitioner had established his trial counsel was deficient in certain respects but denied relief on the basis that Petitioner had not proven he was prejudiced by these deficiencies.

## II.

When Victim was an infant, her mother Monica Gleaton (Mother) sent her to live with her cousin Julia Thompson (Cousin) and Petitioner because Mother was seventeen years old, had four other children, and was therefore unable to care for Victim. When Victim was twelve years old, someone reported to authorities she was being physically abused and neglected by Cousin. While being interviewed by South Carolina Department of Social Services (DSS) caseworker Trina Elfering, Victim denied she was being abused by Cousin but reported Petitioner had sexually abused her from the time she was five years old. Ms. Elfering reported the allegations to the Lexington County Sheriff, resulting in the charges against Petitioner.

## III.

Petitioner claims his trial counsel rendered ineffective assistance by failing to object to inadmissible hearsay testimony and by failing to object to testimony that improperly bolstered Victim's credibility.

To establish ineffective assistance of counsel, the PCR applicant must prove (1) counsel's performance fell below an objective standard of reasonableness, and (2) the applicant sustained prejudice as a result of counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *Cherry v. State*, 300 S.C. 115, 117–18, 386 S.E.2d 624, 625 (1989). To establish prejudice, the applicant must prove "there is a reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different." *Cherry*, 300 S.C. at 117–18, 386 S.E.2d at 625 (quoting *Strickland*, 466 U.S. at 694).

In a PCR case, this Court will uphold the PCR court's factual findings if there is any evidence of probative value in the record to support them. *Sellner v. State*, 416 S.C. 606, 610, 787 S.E.2d 525, 527 (2016). However, this Court gives no deference to the PCR court's conclusions of law, and we review those conclusions de novo. *Jamison v. State*, 410 S.C. 456, 465, 765 S.E.2d 123, 127 (2014).

## A. Deficient Performance

The PCR court's deficiency findings were based upon an analysis of the South Carolina Rules of Evidence governing hearsay and upon the common law barring inadmissible bolstering testimony; because these findings—in this case—are conclusions of law, we review them de novo.

### Failure to Object to Inadmissible Hearsay Testimony

In his application and during the PCR hearing, Petitioner claimed trial counsel rendered ineffective assistance by failing to object to inadmissible hearsay testimony given by DSS caseworker Elfering. The PCR court did not address this allegation in its order. Petitioner raised the issue again in his motion for reconsideration made pursuant to Rule 59(e) of the South Carolina Rules of Civil Procedure. The PCR court again did not address the issue. Petitioner raises the issue again before this Court; therefore, the issue is properly before us.

Ms. Elfering testified at trial that she spoke with Victim about each allegation against Petitioner and that Victim "revealed to me that she was being sexually abused by [Petitioner]." Trial counsel did not object to this testimony. Petitioner contends this testimony was inadmissible hearsay which served to improperly corroborate Victim's testimony.

Petitioner also claims trial counsel was ineffective in failing to object to inadmissible hearsay testimony provided by Dr. Alicia Benedetto, a clinical psychologist who conducted the forensic interview of Victim at the request of law enforcement.[2] Dr. Benedetto was qualified by the trial court as an expert in clinical

---

[2] The audio and visual recording of Victim's forensic interview was not offered into evidence by the State, presumably because Victim was twelve years old at the time of the interview. *See* S.C. Code Ann. § 17-23-175 (2014) (permitting the admissibility of certain out-of-court statements of a child under the age of twelve).

psychology and child sexual abuse assessment. The solicitor asked Dr. Benedetto if Victim made any disclosures to her during the forensic interview, and Dr. Benedetto testified Victim disclosed chronic sexual abuse by Petitioner in the form of vaginal penetration, anal penetration, and oral sex. Trial counsel did not object to this testimony. Petitioner claims this testimony was inadmissible hearsay which served to improperly corroborate Victim's testimony. The PCR court ruled trial counsel was deficient in not objecting but ruled Petitioner did not prove he was prejudiced by the deficiency. In its brief, the State does not directly contest the PCR court's finding of deficiency and instead concentrates its argument on the prejudice prong. To ensure our analysis is complete, we will address the deficiency prong with respect to both Dr. Benedetto's and Ms. Elfering's hearsay testimony.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 801(c), SCRE. Hearsay is not admissible except as provided by the South Carolina Rules of Evidence, by other rules prescribed by this Court, or by statute. Rule 802, SCRE. Rule 801(d)(1)(D), SCRE, provides:

> A statement is not hearsay if . . . [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . consistent with the declarant's testimony in a criminal sexual conduct case . . . where the declarant is the alleged victim and the statement is *limited to the time and place of the incident.*

(emphasis added). This rule obviously limits corroborating testimony in this case to the time and place of the assault(s); any other details or particulars, including the perpetrator's identity, must be excluded. *See Watson v. State*, 370 S.C. 68, 71–72, 634 S.E.2d 642, 644 (2006).

The foregoing testimony from Ms. Elfering and Dr. Benedetto was clearly inadmissible hearsay. These accounts of their conversations with Victim meet the definition of hearsay under Rule 801(c), and these accounts provided information outside the time and place restriction set forth in Rule 801(d)(1)(D). The State does not contend trial counsel's failure to object was part of a valid trial strategy. *See Watson*, 370 S.C. at 73, 634 S.E.2d at 644 (finding trial counsel was not deficient when his failure to object to inadmissible hearsay testimony was part of a valid trial strategy). Trial counsel was deficient in not objecting.

**Failure to Object to Inadmissible Bolstering Testimony**

The PCR court ruled trial counsel was deficient in failing to object to testimony of Detective Traci Barr and Dr. Benedetto that impermissibly bolstered the credibility of Victim. We agree.

Detective Barr of the Lexington County Sheriff's Department testified at trial that she investigates child exploitation cases and that she conducted an investigation in this case. Detective Barr testified about her "specialized training" in child exploitation cases and testified she was trained in forensic interviewing of children who claim to be victims of sexual abuse. She did not conduct the forensic interview in this case, but she testified she watched the audio-visual recording of the forensic interview conducted by Dr. Benedetto and reviewed the medical findings of Dr. Susan Luberoff, who conducted a physical examination of Victim after Victim reported she was sexually abused. In the forensic interview, as testified to by Dr. Benedetto, Victim identified Petitioner as the perpetrator of the sexual abuse and provided other details. Detective Barr testified Victim's disclosures in the forensic interview were consistent with her own training and experience, and she testified the physical findings of sexual abuse recorded by Dr. Luberoff corroborated the account given by Victim during the forensic interview. The PCR court correctly ruled trial counsel was deficient in not objecting because this testimony impermissibly bolstered Victim's testimony. The State did not contest the PCR court's finding in its brief to this Court.

As previously noted, Dr. Benedetto conducted the forensic interview of Victim and was qualified by the trial court as an expert in clinical psychology and child sexual abuse assessment. She testified she has conducted perhaps a thousand forensic interviews of children who are possible victims of physical, sexual, or psychological abuse. She explained the process she follows in conducting a forensic interview and explained what certain terms mean and how she applies them in reaching her conclusions. She testified Victim suffered from post-traumatic stress disorder (PTSD) based upon the significant emotional distress and "genuine, just palpable grief" exhibited by Victim during the interview. When asked by the solicitor to explain her overall findings to the jury, Dr. Benedetto testified that while most interviews conducted of alleged child abuse victims are determined to be "problematic,"[3] less than one-third of these interviews are found to be "compelling" for some form of abuse. She went on to testify that Victim's "interview was ruled

---

[3] Dr. Benedetto did not explain what the term "problematic" means in her profession.

compelling for physical abuse, sexual abuse, and psychological abuse."  Even more glaringly, she testified:

> But I would feel comfortable in this case saying that *it's among the most compelling interviews that I've conducted,* not only because of the amount of detail that she was able to provide, but also the emotional intensity that she was *clearly experiencing* in the room, in -- in having to provide her disclosure.

(emphasis added).

The State argues the foregoing testimony from Dr. Benedetto was admissible because it was part and parcel of her diagnosis that Victim suffered from PTSD and that while Dr. Benedetto's testimony may have indirectly supported the conclusion that the crimes occurred, the testimony did not directly vouch for Victim's credibility.  We disagree.  The testimony most certainly served to directly enhance the credibility of Victim.  Indeed, while urging the jury to conclude Victim was credible, the State on three occasions during its closing argument cited Dr. Benedetto's finding that Victim's account of sexual abuse was among the most compelling she had encountered in her one thousand child interviews.  Further, the previously reviewed inadmissible hearsay testimony from Dr. Benedetto was amplified when, as quoted above, Dr. Benedetto emphasized the "amount of detail that [Victim] was able to provide" in conjunction with the emotional intensity displayed by Victim during the interview.

The State alternatively argues that when this case was tried in 2008, trial counsel was without the "pointed guidance" provided by appellate decisions that testimony similar to that provided by Dr. Benedetto was improper bolstering.  *See, e.g.*, *State v. Kromah*, 401 S.C. 340, 737 S.E.2d 490 (2013); *State v. Jennings*, 394 S.C. 473, 716 S.E.2d 91 (2011); *Smith v. State*, 386 S.C. 562, 689 S.E.2d 629 (2010).  We disagree.  In *State v. Dawkins*, 297 S.C. 386, 377 S.E.2d 298 (1989), the defendant was charged with sexually assaulting a minor.  The victim sought psychiatric treatment; at trial, the solicitor asked the treating psychiatrist, "[A]re you of the impression that [the victim's] symptoms are genuine?"  The psychiatrist responded in the affirmative.  *Id.* at 393, 377 S.E.2d at 302.  Defense counsel objected, the objection was sustained, and the defendant moved for a mistrial.  *Id.* Instead of ruling on that motion, the trial judge gave the jury a curative instruction. *Id.*  As part of our analysis as to whether the trial court erred in denying the motion for a mistrial, we concluded the solicitor's question improperly invited the

psychiatrist to give an opinion as to the victim's credibility. *Id.* at 394, 377 S.E.2d at 302. We recently concluded in *Briggs v. State*, 421 S.C. 316, 325, 806 S.E.2d 713, 718 (2017), that after *State v. Dawkins* was decided in 1989, the law was "clear that no witness may give an opinion as to whether the victim is telling the truth." More specifically, we held that after *State v. Dawkins* was decided:

> [R]easonably competent trial counsel should know to object—absent a valid trial strategy—when a forensic interviewer gives testimony that indicates the witness believes the victim, but does not serve some other valid purpose. When the testimony directly conveys the witness's opinion that the victim is telling the truth, it is obviously improper bolstering.

*Briggs*, 421 S.C. at 325, 806 S.E.2d at 718.

Also, *State v. Dempsey*, 340 S.C. 565, 532 S.E.2d 306 (Ct. App. 2000), was decided by the court of appeals eight years before Petitioner's jury trial. Dempsey was charged with first degree CSC with a minor. A child sexual abuse counselor testified he conducted thirteen counseling sessions with the minor victim and that no statements from the victim would lead him to believe the victim was not telling the truth about being sexually abused. *Id.* at 568, 532 S.E.2d at 308. The counselor also testified that when a child says he has been sexually abused, the child is telling the truth approximately 95% of the time. *Id.* at 569, 532 S.E.2d at 308. Dempsey was convicted and appealed. The *Dempsey* court cited *State v. Dawkins* and concluded the counselor's testimony improperly vouched for the minor victim's credibility. *Id.* at 571, 532 S.E.2d at 309. The *Dempsey* court also quoted with approval this pointed directive from the Supreme Court of Oregon:

> We have said before, and we will say it again, this time with emphasis-no psychotherapist may render an opinion on whether a witness is credible in any trial in this state. The assessment of credibility is for the trier of fact and not for psychotherapists.[4]

---

[4] The quotation of the pointed directive from the Supreme Court of Oregon used by the *Dempsey* court was originally quoted in *State v. Morgan*, 326 S.C. 503, 515, 485 S.E.2d 112, 119 (Ct. App. 1997). However, the *Morgan* court made small errors in transcribing the quoted language. These errors carried forward in *Dempsey*. The

*Id.* (quoting *State v. Milbradt*, 756 P.2d 620, 624 (Or. 1988)).

The PCR court ruled trial counsel was deficient in failing to object. We agree. Well before Petitioner's criminal trial, trial counsel was on notice that it was improper for a witness to vouch for the credibility of another witness. The foregoing testimony of Dr. Benedetto unmistakably conveyed to the jury her belief that Victim was telling the truth about the abuse. Detective Barr's testimony also conveyed to the jury her impression that Victim was telling the truth. This testimony was patently inadmissible, and there was no strategic reason for trial counsel not to object.

## B. Prejudice

To satisfy the prejudice prong of *Strickland*, Petitioner must demonstrate a "reasonable probability" that the outcome of the trial would have been different had trial counsel not committed the deficiencies outlined above. *See Rutland v. State*, 415 S.C. 570, 577, 785 S.E.2d 350, 353 (2016). "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial." *Id.*

In this case, the State contends—and the PCR court seemingly concluded—that Petitioner was not prejudiced by trial counsel's deficient performance because properly admitted evidence overwhelmingly established Petitioner's guilt. In *Smalls v. State*, Op. No. 27764 (S.C. Sup. Ct. filed Feb. 7, 2018) (Shearouse Adv. Sh. No. 6 at 43), we addressed the question of "overwhelming evidence" in the PCR setting by balancing the individual impact of trial counsel's error(s) against the strength of properly admitted evidence of a PCR applicant's guilt. As we explain below, the overall strength of the properly admitted evidence of Petitioner's guilt does not overcome the individual impact of each instance of trial counsel's deficient performance. Therefore, we conclude Petitioner has established there is a reasonable probability that, absent trial counsel's deficiencies, the outcome of his trial would have been different.

**Inadmissible Hearsay Testimony**

The timing of Petitioner's criminal trial and his PCR hearing straddled a shift in South Carolina case law governing the prejudice analysis to be employed in sexual

---

Supreme Court of Oregon stated in full: "We have said before, and we will say it again, but this time with emphasis-we really mean it-*no psychotherapist may render an opinion on whether a witness is credible in any trial conducted in this state.* The assessment of credibility is for the trier of fact and not for psychotherapists." *Milbradt*, 756 P.2d at 624.

assault cases in which a witness provides inadmissible hearsay testimony. In 2008, when Petitioner's criminal case was tried, there was a bright-line rule of finding prejudice when trial counsel failed to object to inadmissible hearsay testimony identifying the defendant as the perpetrator. *See Jolly v. State*, 314 S.C. 17, 21, 443 S.E.2d 566, 569 (1994); *Dawkins v. State*, 346 S.C. 151, 156–57, 551 S.E.2d 260, 263 (2001). However, by the time Petitioner's PCR hearing was held in 2013, a majority of this Court agreed the bright-line rule should no longer control and concluded that in a direct appeal, a harmless error analysis should be employed when reviewing the admission of hearsay testimony that improperly corroborates the victim's testimony in a sexual assault case. *See State v. Jennings*, 394 S.C. 473, 482, 716 S.E.2d 91, 95–96 (2011) (Kittredge, J., concurring), *and* 394 S.C. at 483, 716 S.E.2d at 96 (Toal, C.J., dissenting) (collectively overruling *Jolly* and its progeny to the extent those cases impose a categorical or per se rule precluding a finding of harmless error). Similarly, in a PCR case, trial counsel's deficient failure to object to such testimony does not remove an applicant's burden to prove prejudice. As part of the prejudice analysis, the PCR court and the reviewing court must therefore consider the strength of the State's case apart from the inadmissible evidence to which trial counsel deficiently failed to object.

Citing "the combination of the physical evidence, [Victim's] credible testimony that provided precise details of the offenses, [Mother's] credible testimony, and the lack of contradictory testimony," the PCR court ruled trial counsel's deficient performance could not reasonably have affected the outcome of the trial. In so finding, the PCR court seems to have concluded these four points constitute overwhelming evidence of Petitioner's guilt. We now address these four factual findings in turn and conclude that none of them, either standing alone or when considered together, constitute overwhelming evidence of Petitioner's guilt.

First, Dr. Luberoff testified there was physical evidence Victim had been sexually abused or had sustained "penetrating vaginal trauma." While Dr. Luberoff's testimony supports a finding that Victim was sexually abused, the physical evidence cited by Dr. Luberoff did not constitute overwhelming evidence—or any evidence at all, for that matter—that *Petitioner* was the perpetrator.

Second, the PCR court found Victim's *trial* testimony was credible. While we defer to the PCR court's credibility findings as to witnesses who testified before the PCR court, we do not defer to the PCR court's credibility findings as to witnesses who did not testify before the PCR court. The PCR court reviewing the trial transcript is in no better position than we are to determine the credibility of trial witnesses or otherwise assess the strength of the State's case; consequently, we give

no deference to the PCR court's credibility findings when we review the testimony of such witnesses. *See Foye v. State*, 335 S.C. 586, 589, 518 S.E.2d 265, 267 (1999) (stating the reason appellate courts give "great deference to a [PCR court's] findings" is because the PCR court has "the opportunity to directly observe the [PCR] witnesses").

Here, the PCR court's assessment of Victim's credibility was based upon factors the PCR court did not directly observe, namely (1) the trial judge's comment during sentencing that he found Victim's trial testimony credible, (2) Victim's trial testimony which, according to the PCR court, provided "precise detail" of years of sexual abuse at the hands of Petitioner, and (3) Victim's trial testimony describing Petitioner's psychological grooming of Victim. We are compelled to note Victim's credibility was legitimately called into question at trial, as she admitted during cross-examination that after she accused Petitioner of sexually abusing her, she fabricated allegations of three male schoolmates "raping" her. We note this point not to besmirch Victim, but simply to illustrate why an appellate court may legitimately reach a different conclusion as to the credibility of a witness who neither the PCR court nor the appellate court directly observed. The PCR court erred in concluding Victim's testimony constituted overwhelming evidence of Petitioner's guilt.

Third, the PCR court found Mother's *trial* testimony was credible. Again, while we defer to a PCR court's credibility findings as to witnesses who testified at the PCR hearing, our standard of review does not dictate that we defer to credibility findings as to witnesses the PCR court did not directly observe. However, we need not reach any conclusions as to Mother's credibility, because even if Mother were a credible trial witness, her testimony merely corroborated Victim's testimony that Victim had nightmares and sleep disturbances and that Victim would "fret" around men. While Mother's testimony may support the conclusion that Victim was sexually abused, Mother's testimony does not support the conclusion that Petitioner was the perpetrator. There is no probative evidence in the record to support the PCR court's finding that Mother's testimony constituted overwhelming evidence of Petitioner's guilt.

Fourth, the PCR court cited the "absence of contradictory testimony" as part of its basis for concluding there was overwhelming evidence of guilt. The PCR court erred as a matter of law in considering the lack of contradictory testimony, as this finding suggests Petitioner—who neither testified nor introduced any other evidence—had the burden of producing evidence at his criminal trial that would contradict the evidence introduced by the State. At all times during a criminal trial, the State has the burden of proving a defendant's guilt beyond a reasonable doubt.

At no time does a defendant assume the burden of either contradicting the State's evidence or proving himself not guilty. *See Lowry v. State*, 376 S.C. 499, 505, 657 S.E.2d 760, 763 (2008) (noting the Due Process Clauses of the Fifth and Fourteenth Amendments "protect an accused against conviction unless **the State** supplies proof beyond a reasonable doubt of each element necessary to constitute the crime with which the accused is charged") (emphasis added). Since a criminal defendant does not have the burden of presenting contradictory evidence during his criminal trial, the absence of contradictory testimony should not have been considered by the PCR court in its prejudice analysis.

We conclude Petitioner's jury trial was infected by the type of improper corroborating evidence warned of in *State v. Barrett*, 299 S.C. 485, 487, 386 S.E.2d 242, 243 (1989). In *Barrett*, as here, there was physical evidence suggesting a child victim was sexually abused. *Id.* A DSS social worker was improperly allowed to testify to the details of the sexual abuse reported to her by the victim. *Id.* at 486, 386 S.E.2d at 243. Other than this testimony, the State relied solely upon the victim's testimony to establish the details of the crime and the identity of Barrett as the perpetrator. *Id.* at 487, 386 S.E.2d at 243. The State asserted that any error was harmless because the inadmissible testimony was "merely cumulative" to the victim's testimony. *Id.* We held, "[I]t is precisely this cumulative effect which enhances the devastating impact of improper corroboration. Accordingly, admission of the evidence mandates reversal of the conviction." *Id.* Although a direct appeal, *Barrett* is strikingly similar to the instant case. Here, other than the hearsay testimony referenced above (and the inadmissible bolstering testimony discussed herein), the only evidence pointing to Petitioner as the perpetrator was Victim's testimony. As was the case in *Barrett*, the cumulative effect of the hearsay testimony undeniably enhanced its devastating impact. As a whole, the properly admitted evidence of Petitioner's guilt was not strong enough to overcome trial counsel's failure to object to the inadmissible hearsay testimony of Ms. Elfering and Dr. Benedetto. We therefore hold there is no evidentiary support for the PCR court's conclusion that Petitioner was not prejudiced by trial counsel's errors.

**Inadmissible Bolstering Testimony**

The devastating prejudicial effect of Dr. Benedetto's improper bolstering testimony is likewise clear. We addressed similar circumstances in *Smith v. State*, 386 S.C. 562, 689 S.E.2d 629 (2010). PCR applicant Smith was convicted of second degree CSC with a minor. *Id.* at 564, 689 S.E.2d at 630. During Smith's jury trial, the forensic interviewer testified without objection that she found the child victim "believable" and that the victim had no reason "not to be truthful." *Id.* at 564, 689

S.E.2d at 631. The interviewer also provided testimony that exceeded the time and place restrictions set forth in Rule 801(d)(1)(D), SCRE. *Id.* at 568, 689 S.E.2d at 633. During its closing argument, the State emphasized the inadmissible bolstering opinion testimony and the inadmissible hearsay. *Id.* at 569, 689 S.E.2d at 633. We noted the outcome of Smith's jury trial "hinged on the [v]ictim's credibility regarding [the] identification of the perpetrator, and there was otherwise an absence of overwhelming evidence of Smith's guilt." *Id.* We concluded the PCR court's finding of no prejudice was without evidentiary support. *Id.* Here, as in *Smith*, the outcome of Petitioner's jury trial hinged on Victim's credibility, and there was otherwise an absence of overwhelming evidence of guilt. Dr. Benedetto clearly vouched for Victim's credibility when she testified that she considered Victim's account of abuse to be among the most compelling she had encountered in almost one thousand child interviews. The State emphasized this inadmissible expert testimony three times during its closing argument.[5]

The properly admitted evidence of Petitioner's guilt was not strong enough to overcome trial counsel's failure to object to Dr. Benedetto's inadmissible bolstering testimony. We therefore hold there is no evidentiary support for the PCR court's conclusion that Petitioner was not prejudiced by trial counsel's failure to object.

For the same reason, we conclude there is no evidentiary support for the PCR court's finding that Petitioner was not prejudiced by trial counsel's failure to object to improper bolstering testimony provided by Detective Barr. Detective Barr noted her specialized training in child exploitation cases and testified she was a trained forensic interviewer. While she did not conduct the forensic interview of Victim, Detective Barr testified she watched the audio-visual recording of Dr. Benedetto's interview and reviewed the physical findings of Dr. Luberoff. Victim's credibility was dramatically enhanced by Detective Barr's testimony that Victim's disclosures were consistent with her own training as a forensic interviewer and by Detective Barr's testimony that Dr. Luberoff's physical findings corroborated Victim's disclosure to Dr. Benedetto that she was abused by Petitioner.

**IV.**

---

[5] As we observed in *Briggs v. State*, 421 S.C. 316, 333, 806 S.E.2d 713, 722 (2017), and in *State v. Kromah*, 401 S.C. 340, 358, 737 S.E.2d 490, 499 (2013), the impermissible harm arising from improper bolstering is compounded when the witness is qualified as an expert.

We hold trial counsel was deficient for not objecting to both the inadmissible hearsay testimony and inadmissible testimony which improperly bolstered Victim's credibility.  We hold there is no probative evidence in the record to support the PCR court's findings that Petitioner was not prejudiced by these deficiencies.  Therefore, we **REVERSE** the PCR court's denial of post-conviction relief and remand to the court of general sessions for a new trial.

**BEATTY, C.J., KITTREDGE, HEARN and FEW, JJ., concur.**