**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

## THE STATE OF SOUTH CAROLINA
### In The Court of Appeals

Timothy A. Lemacks, Petitioner,

v.

State of South Carolina, Respondent.

Appellate Case No. 2016-002387

---

### ON WRIT OF CERTIORARI

---

Appeal From Colleton County
Edgar W. Dickson, Circuit Court Judge

---

Unpublished Opinion No. 2021-UP-286
Submitted December 2, 2019 – Filed July 21, 2021

---

### REVERSED

---

Appellate Defender Lara Mary Caudy, of Columbia, for Petitioner.

Attorney General Alan McCrory Wilson and Senior Assistant Deputy Attorney General William M. Blitch, Jr., both of Columbia, for Respondent.

---

**PER CURIAM:** In 2011, a Colleton County jury found Timothy Lemacks (Petitioner) guilty of first-degree criminal sexual conduct (CSC) with a minor.  The trial court sentenced him to twenty-five years' imprisonment. Petitioner appealed, and this court dismissed his appeal pursuant to *Anders v. California*.[1]  *See State v. Lemacks*, Op. No. 2013-UP-363 (Ct. App. filed Oct. 3, 2013).  Petitioner filed an application for post-conviction relief (PCR), which was denied.  This petition for a writ of certiorari followed, and this court granted certiorari.  We reverse the decision of the PCR court.

**FACTS**

At trial, eleven-year-old Victim testified she was sleeping on her living room floor with her younger siblings on the night she alleges Petitioner touched her. Petitioner worked jobs with Victim's father and was at Victim's house for a family cookout.  She recalled Petitioner "put his hand in [her] underwear" and stuck his finger inside her.  Victim stated it hurt "really, really bad" and she told him to stop.

Victim testified that Petitioner subsequently went to sleep in the living room, and she woke her siblings and took them with her to the bunkbed in her bedroom.  Once in the top bunk in the bedroom, she told them what happened.  She did not go back to sleep and stated she "stayed up all night long to make sure my brother and sister were okay."  At one point during the night, Petitioner went in the bathroom near her bedroom and came into her room and kept flicking the lights on and off.  He then left the lights on and came toward the bunkbed and shook the bars on the bed.  Victim's brother accused Petitioner of touching Victim and Petitioner said "No, no.  I wouldn't do anything like that."  Petitioner then went to sleep on the sofa in the living room.  Victim and her siblings stayed on the top bunk and Victim would not let them get down.  After Victim's father came in the bedroom the following morning and told the children to go get in bed with their mother, Victim watched TV for a period of time and then told her mother.  She remembered she went to her grandmother's house, and she later told doctors and a detective the same story.

Victim's seven-year-old sister (Sibling) testified she remembered the night Petitioner stayed at her house and they were all in the living room.  She stated she saw Petitioner lying on the floor next to Victim at some point that night.  Sibling

---

[1] 386 U.S. 738 (1967).

corroborated Victim's testimony that Victim woke the siblings up and took them to her bunkbed; however, she could not remember the conversation that occurred once they got to the bunkbed. Sibling also testified that Petitioner came into the bedroom and shook the bunkbed.

Victim's mother (Mother) testified Victim told her in the morning that Petitioner "st[u]ck his hands in [her] pants and he moved his finger around." Trial counsel did not object to the statements. Mother added that while Victim was saying this, she was "crying" and "upset." Mother explained she gathered the children, went to her mother's house next door, and called law enforcement. She testified she was a victim of sexual assault when she was sixteen and nobody believed her, so she ensured she comforted Victim and immediately assured her she believed her story. Mother stated she did not "pressure" her daughter to press charges. Trial counsel did not object to this testimony.

The trial court qualified Dr. Michelle Amaya as an expert in child abuse pediatrics, and she testified she interviewed Victim and found her "believable." Trial counsel objected to bolstering, and the court sustained the objection and instructed the jury to disregard the statement. The State then asked Dr. Amaya what Victim disclosed to the nurse at the emergency room, and trial counsel objected to any testimony beyond the time and place. The court permitted Dr. Amaya to proceed under the medical diagnosis and treatment exception to hearsay. According to Dr. Amaya, Victim informed the nurse that she felt Petitioner "trying to touch her privates," and "she tried to push his hand away" but "he put his finger insider her" and "it hurt." Trial counsel did not object.

Victim's father (Father) testified he arrived home to see Mother crying, and she told him Petitioner had touched Victim. He said he told Victim he was sorry and he should not have allowed Petitioner to stay in their home. Trial counsel did not object to Father's testimony.

Detective Dorothea Geathers testified that she was present during Victim's forensic interview, and the interview provided her with "enough evidence" to make an arrest. On re-direct, the State asked Detective Geathers "who did [Victim] say did it?" In discussing the forensic interview, Detective Geathers answered that Victim said [Petitioner] touched her. Trial counsel did not object. He also did not object when Detective Geathers repeated Victim's interview answers. There was no objection when Detective Geathers asserted that Victim had "been [ninety-eight percent] consistent with all her stories" throughout the investigation. The forensic interview was admitted into evidence, and Detective Geathers stated that some of

Victim's testimony was inconsistent, but the allegations of abuse remained consistent.

The jury convicted Petitioner of first-degree CSC with a minor. The trial court sentenced him to twenty-five years' imprisonment. After an unsuccessful appeal, Petitioner filed a PCR application. During the PCR hearing, Petitioner's counsel verbally amended his application to allege trial counsel was ineffective for failing to object to Mother's, Father's, Dr. Amaya's, and Detective Geathers's testimony as improperly bolstering Victim's testimony. Specifically, Petitioner alleged trial counsel should have objected to testimony on pages 139-42, 199, 165-67, 248-51, 253, and 255-56 of the trial transcript.

Trial counsel, the only witness at the PCR hearing, testified there was no physical evidence in Petitioner's case, and the trial was a question of whether the jury found Victim or Petitioner more credible. When presented with Dr. Amaya's testimony that Victim told her it hurt when Petitioner touched her, trial counsel responded, "I probably should have objected to that . . . and I did not." Petitioner presented Mother's testimony about Victim telling her what happened, and trial counsel again answered, "I probably should have objected, and it doesn't look like I did." Petitioner brought up Detective Geathers's testimony about Victim's allegations, and trial counsel again answered, "I should have objected to that, and I did not." Trial counsel explained he chose not to object to some of Detective Geathers's testimony because he wanted to elicit some inconsistencies regarding the clothing Victim wore on the night of the incident. When asked if he had a strategic reason for not objecting to all of the hearsay statements, trial counsel stated he did not. Trial counsel repeated he "probably should have objected" to the adults testifying about things Victim said.

The PCR court denied PCR, finding "[trial] counsel's decisions and conduct were appropriate under the circumstances and did not fall below professional norms of reasonableness." It further found that despite trial counsel admitting he should have objected to some of the hearsay testimony, "the evidence against [Petitioner] was overwhelming and the lack of proper objections would not have changed the outcome of the trial."

**ISSUE**

Did the PCR court err in finding trial counsel was effective?

**STANDARD OF REVIEW**

"An appellate court must give deference to the PCR court's factual findings, and must uphold them if there is any evidence of probative value to support them." *Buckson v. State*, 423 S.C. 313, 320, 815 S.E.2d 436, 440 (2018). "However, this Court gives no deference to the PCR court's conclusions of law, and we review those conclusions de novo." *Thompson v. State*, 423 S.C. 235, 239, 814 S.E.2d 487, 489 (2018).

## LAW/ANALYSIS

"A criminal defendant is guaranteed the right to effective assistance of counsel under the Sixth Amendment to the United States Constitution." *Taylor v. State*, 404 S.C. 350, 359, 745 S.E.2d 97, 101 (2013). "In order to establish a claim for ineffective assistance of counsel, the applicant must show that: (1) counsel failed to render reasonably effective assistance under prevailing professional norms, and (2) counsel's deficient performance prejudiced the applicant's case." *Speaks v. State*, 377 S.C. 396, 399, 660 S.E.2d 512, 514 (2008). Deficiency "is measured by an objective standard of reasonableness." *Taylor*, 404 S.C. at 359, 745 S.E.2d at 102.

To establish prejudice, an applicant must show that "but for counsel's error, there is a reasonable probability the result of the proceedings would have been different." *Id.* at 359, 745 S.E.2d at 102. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland*, 466 U.S. at 700.

"Counsel's performance is accorded a favorable presumption, and a reviewing court proceeds from the rebuttable presumption that counsel 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Smith v. State*, 386 S.C. 562, 567, 689 S.E.2d 629, 632 (2010) (quoting *Strickland*, 466 U.S. at 690). "Accordingly, when counsel articulates a valid reason for employing a certain strategy, such conduct will not be deemed ineffective assistance of counsel." *Id.* at 567, 689 S.E.2d at 632. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

Hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 801(c), SCRE. Hearsay is not admissible except as provided by the South Carolina Rules of Evidence, by other rules prescribed by the South Carolina Supreme Court, or by statute. Rule 802, SCRE. Rule 801(d)(1)(D), SCRE, provides:

> A statement is not hearsay if . . . [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . consistent with the declarant's testimony in a criminal sexual conduct case . . . where the declarant is the alleged victim and the statement is limited to the time and place of the incident.

"This rule obviously limits corroborating testimony . . . to the time and place of the assault(s); any other details or particulars, including the perpetrator's identity, must be excluded." *Thompson*, 423 S.C. at 241, 814 S.E.2d at 490.

Petitioner argues trial counsel was ineffective for failing to object to the prejudicial hearsay testimony of Victim's parents, the treating pediatrician,[2] and Detective Geathers. He contends the testimony bolstered Victim's credibility in a case with no physical evidence. Petitioner argues the testimony was not harmless, and the trial likely would have ended differently if trial counsel had objected to the testimony. We agree.

We find that Petitioner has shown trial counsel was deficient for failing to object to Detective Geathers's hearsay testimony on redirect. Trial counsel did not object when Detective Geathers testified that Victim identified Petitioner as the culprit in her forensic interview. Trial counsel also did not object when Detective Geathers improperly bolstered Victim's testimony by stating Victim was "consistent" with her account of events. The jury viewed the forensic interview immediately afterwards, which compounded the error of trial counsel's failure to object.

---

[2] Because we find trial counsel was deficient for failing to object to the hearsay testimony of the parents and bolstering and hearsay testimony of Detective Geathers, we do not reach the question of whether trial counsel properly objected to Dr. Amaya's testimony. *See State v. Hepburn*, 406 S.C. 416, 428 n.14, 753 S.E.2d 402, 408 n.14 (2013) (noting that the court need not reach remaining issues after addressing an issue that is dispositive of the appeal).

"Improper corroboration testimony that is *merely cumulative to the victim's testimony,* . . . cannot be harmless, because it is precisely this cumulative effect which enhances the devastating impact of improper corroboration." *Jolly v. State,* 314 S.C. 17, 21, 443 S.E.2d 566, 569 (1994), *overruled on other grounds by Thompson*, 423 S.C. 235, 814 S.E.2d 487.

Respondent argues that Mother's testimony about Victim's identification of Petitioner was admissible as an excited utterance. However, trial counsel still should have objected to the hearsay testimony and given the trial judge the opportunity to rule. During the PCR hearing, trial counsel admitted he should have objected to Mother's testimony. The State was able to improperly bolster Victim's testimony through Mother's testimony as to Victim's statements about Petitioner's guilt. This testimony far exceeded the time and place restrictions prescribed by Rule 801(d)(1)(D), SCRE, and no trial strategy supports the failure to object.

Lastly, trial counsel should have objected to Father's testimony that Mother told him Petitioner touched Victim. This testimony was not limited to the time and place restrictions prescribed by Rule 801(d)(1)(D), SCRE, does not fall within another exception, and is not related to trial counsel's trial strategy.

At the PCR hearing, trial counsel noted he did not have a trial strategy for failing to object to various portions of the hearsay testimony.[3] "The presumption of adequate representation based on a valid trial strategy disappears when trial counsel acknowledged there was no trial strategy in mind when he failed to object to the improper hearsay and bolstering testimony." *Smith*, 86 S.C. at 568, 689 S.E.2d at 633. The multiple instances of trial counsel's failure to object as outlined above, along with the failure to articulate a valid trial strategy, suggests that trial counsel was deficient and satisfies the first prong of *Strickland*.

We next consider whether counsel's deficient performance resulted in prejudice to Petitioner. Our supreme court has "addressed the question of 'overwhelming evidence' in the PCR setting by balancing the individual impact of trial counsel's error(s) against the strength of properly admitted evidence of a PCR applicant's

---

[3] At the PCR hearing, trial counsel discussed the possible trial strategy of trying to show Mother's motivation for urging Victim to make accusations against Petitioner. This strategy might relate to Mother's testimony that she believed Victim but does not relate to Mother's or any other witness's hearsay testimony.

guilt."  *Thompson*, 423 S.C. at 245, 814 S.E.2d at 492 (quoting *Smalls v. State*, 422 S.C. 174, 180, 810 S.E2d 836, 839 (2018)).

In *Smalls*, our supreme court found both the circuit court and this court erred in using "what they considered "overwhelming evidence of guilt" as a categorical bar that precluded a finding of prejudice, without the necessity of separately considering the impact of counsel's error."  422 S.C. at 190, 810 S.E.2d at 844.  For evidence to be considered overwhelming such that it categorically precludes a prejudice finding, "the evidence must include something conclusive, such as a confession, DNA evidence demonstrating guilt, or a combination of physical and corroborating evidence so strong that the *Strickland* standard of "a reasonable probability ... the factfinder would have had a reasonable doubt" cannot possibly be met."  *Id.* at 191, 810 S.E.2d at 845.

In determining prejudice, we should consider "the strength of the State's case apart from the admissible evidence to which trial counsel deficiently failed to object."  *Thompson* at 246, 814 S.E.2d at 493.  "[T]rial errors 'occur during the presentation of the case to the jury, and may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt.'"  *State v. Jenkins*, 412 S.C. 643, 650–51, 773 S.E.2d 906, 909 (2015) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 307–08 (1991)).  "[A]ppellate courts must determine the materiality and prejudicial character of the error in relation to the entire case."  *Id.* at 651, 773 S.E.2d at 910.

This is a case with no physical evidence.  Victim's testimony against Petitioner is the only properly admitted evidence which must be considered against the individual impact of trial counsel's errors.  Here, we find the overall strength of the properly admitted evidence of Petitioner's guilt does not overcome the individual impact of each instance of trial counsel's deficient performance.  Therefore, we conclude Petitioner has established there is a reasonable probability that, absent trial counsel's deficiencies, the outcome of his trial would have been different.  Based on the foregoing, we reverse the decision of the PCR court.

**REVERSED.**[4]

**HUFF, WILLIAMS, and MCDONALD, JJ., concur.**

---

[4] We decide this case without oral argument pursuant to Rule 215, SCACR.